UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANICE H. BAELE, ET AL.** | **CIVIL ACTION NO. 23-CV-1558** |
| **VERSUS** | **JUDGE DARREL JAMES PAPILLION** |
| **UNIVERSITY HEALTHCARE SYSTEM, L.C. D/B/A TULANE MEDICAL CENTER, ET AL.** | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

## ORDER AND REASONS

Before the Court are independent motions for summary judgment filed by Defendants Dr. Stephen Mallernee ("Dr. Mallernee") and University Healthcare System, L.C. d/b/a Tulane Medical Center ("Tulane") (collectively, "Defendants"). R. Docs. 32 and 34. Plaintiffs Janice H. Baele, Nicholas Baele, Dana Baele, and Mark Baele ("Plaintiffs") oppose both motions. R. Docs. 36 and 37. For the foregoing reasons, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs are afforded an opportunity to amend their Petition.

## BACKGROUND

This is a medical malpractice action arising from the death of Dr. Joseph Baele ("Dr. Baele") on September 24, 2021. R. Doc. 1-1. Plaintiffs allege Dr. Baele's death was caused by a breach in the applicable standard of care by Dr. Mallernee, the emergency medicine physician who treated Dr. Baele and Tulane, the facility where Dr. Baele underwent medical treatment. *Id.* at ¶¶ 1, 16. Following Dr. Baele's death, Plaintiffs initiated proceedings with a medical review panel pursuant to Louisiana law, and the panel ultimately found in favor of Defendants. *Id.* at ¶ 19. On April 26, 2023, Plaintiffs filed suit against Defendants in Orleans Parish's Civil District Court, and Dr. Mallernee removed to this Court on May 10, 2023. R. Docs. 1 and 1-1. Thereafter, Dr. Mallernee and Tulane filed separate, but nearly identical, motions for summary judgment. R. Docs. 32 and 34.

## LAW AND ANALYSIS

In support of their motions, Defendants point to the medical review panel's determination that Defendants did not breach their duty of care in treating Dr. Baele and argue that because Plaintiffs do not have any admissible expert testimony to refute the panel's determination, they cannot survive summary judgment. Alternatively, Defendants argue that when Dr. Baele died, state legislation protected healthcare providers from civil liability, except in the event of gross negligence or willful misconduct. Defendants insist Plaintiffs' claims must be dismissed because the Petition does not allege facts sufficient to establish that Defendants' actions constituted willful misconduct or gross negligence and that Plaintiffs likewise do not have evidence that Defendants' actions rose to this level.

In response, Plaintiffs insist Defendants' motions are premature. Plaintiffs note that, at the time of their oppositions,[1] the Court had not yet held a Rule 16 scheduling conference and the parties therefore did not have a scheduling order. Plaintiffs argue that while they may not yet have the evidence needed to oppose a substantive motion for summary judgment, including medical expert testimony and evidence of gross negligence or willful misconduct, they are not yet required to offer such evidence.

### I. *Whether Defendants' Motion for Summary Judgment Is Premature*

As a threshold matter, the Court rejects Defendants' invitation for summary judgment on the basis that Plaintiffs do not have the evidence needed to oppose Defendants' motions for summary judgment. As Plaintiffs point out, Defendants filed their motions before the Court issued

---

[1] Plaintiffs filed their opposition briefs on March 26, 2024, and the Court issued a scheduling order on May 13, 2024. R. Docs. 36, 37, and 40.

a scheduling order. Plaintiffs' lack of evidence therefore cannot be said to be dilatory or untimely, and the Court is unwilling to entertain summary judgment merely because Defendants believe Plaintiffs should have moved more expeditiously. Accordingly, to the extent Defendants ask the Court to grant summary judgment based on Plaintiffs' failure to produce evidence to substantively defend against Defendants' motions, Defendants' motions are denied.

II.     *Whether Plaintiffs Fail to Plead and/or Prove the Proper Standard of Care*

In a medical malpractice action, the plaintiff must show (1) the applicable standard of care; (2) a violation or breach of that standard of care; and (3) a causal connection between the breach and the resulting injury or damages. *Jones v. Baton Rouge Gen. Med. Ctr.–Bluebonnet*, 327 So.3d 512, 515 (La. 1 Cir. 2021); LA. R.S. § 9:2794(A). Relevant to Defendants' motions, Louisiana law provides for a heightened burden of proof against health care providers during a state public health emergency. *Whitehead v. Christus Health Cent. La.*, 344 So.3d 91, 94 (La. 3 Cir. 2022). Specifically, Title 29, Louisiana Revised Statute, Section 771 provides: "[d]uring a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or, injury to, any person or damage to any property *except in the event of gross negligence or willful misconduct*." LA. R.S. § 29:771 (emphasis added).

In this case, Section 771 was in effect at the time of Dr. Baele's death. On March 11, 2021, due to the COVID-19 pandemic, former Governor John Bel Edwards declared a statewide public health emergency, triggering the application of Section 771. Proclamation Number 25 JBE 2020; *see Sebble ex rel. Estate of Brown v. St. Luke's #2, LLC*, 379 So.3d 615, 621 (La. 2023). This declaration was ultimately extended through September 29, 2021. Proclamation Number 18 JBE 2021. The events giving rise to Plaintiffs' claims—which occurred on September 24, 2021— occurred within the effective dates of the statewide public health emergency. Plaintiffs do not

3

appear to contest this and note that Section 711 immunity "may be available to . . . [D]efendants as a defense to civil liability in this matter." R. Doc. 37 at 6. They contend instead that "the conclusive decision of whether defendants' actions arose to the level of gross negligence cannot be summarily determined with the outstanding discovery issues" that exist in this case. R. Doc. 37.

To the extent Defendants seek dismissal of Plaintiffs' claims on summary judgment, the Court agrees. As discussed above, discovery in this matter is ongoing and, therefore, summary judgment is premature at this time. Defendants' arguments relating to Section 711 are not limited to Plaintiffs' failure to *offer evidence* of gross negligence or willful neglect, however. Defendants also argue that Plaintiffs have failed to properly *plead* gross negligence or willful neglect. The Court therefore construes these portions of Defendants' motions as motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Applying the familiar and often articulated Rule 12(b)(6) standard,[2] the Court turns to the question of whether Plaintiffs have failed to properly allege gross negligence or willful misconduct.

In defining the parameters of gross negligence and willful misconduct, the Louisiana Supreme Court has explained:

> Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from

---

[2] To survive a Rule 12(b)(6) motion to dismiss, the pleading must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678, 129 S. Ct. 1937 (2009). The court must "accept as true the well-pleaded factual allegations in the complaint." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotations and citations omitted). Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

> ordinary care or the want of even scant care.  There is often no clear distinction between such [willful, wanton, or reckless] conduct and gross negligence, and the two have tended to merge and take on the same meaning.  Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

*Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 639 So.2d 216, 217-18 (La. 1994) (internal quotations and citations).  Gross negligence and willful misconduct "apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended."  *McQuirter v. State*, 308 So.3d 285, 285 (La. 2021) (internal quotations and citations omitted).

After careful review of the Petition, the Court finds Plaintiffs have failed to allege facts giving rise to a claim for gross negligence or willful misconduct.  Plaintiffs' allegations are, essentially, that Tulane staff, including Dr. Mallernee, failed to properly document Dr. Baele's symptoms and vitals and repeatedly failed to promptly treat Dr. Baele's condition.  Plaintiffs allege, for example, the employee who triaged Dr. Bale omitted from her assessment Dr. Baele's history of smoking and tortuous aorta and family history of thoracic aortic aneurysm and inaccurately documented Dr. Baele's level of pain and his emergency severity index level.  Plaintiffs also allege delays for: (1) orders for an EKG, chest x-ray, CT angiogram, and labs; (2) lab results; (3) a cardiothoracic surgery consult; and (4) surgery.  Plaintiffs also allege Dr. Baele was not prescribed any medication to control his high blood pressure and that this condition was only checked four times during his visit to the emergency department.  None of these allegations, even construed in the light most favorable to Plaintiffs, however, show Defendants "actively desired or knew the results of their actions would result in harm."  *Whitehead*, 344 So.3d at 96.  Absent this, Plaintiffs claims sound in medical malpractice under the typical standard, not gross negligence or willful misconduct.  *See Morrow v. La. Med. Mut. Ins. Co.*, 361 So.3d 986, 990 (La.

1 Cir. 2023) (allegations of defendants' "failure to properly assess, evaluate, diagnose, monitor, manage, and treat" plaintiff did not constitute gross negligence or willful misconduct absent facts alleging defendants "consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct"). Accordingly, the Court finds Plaintiffs have failed to state a claim for gross negligence or willful misconduct and grants Defendants' Rule 12(b)(6) motions.

While the result of a successful Rule 12(b)(6) motion is typically dismissal, courts can afford a plaintiff leave to amend the complaint "when justice so requires." FED. R. CIV. P. 15(a)(2). It does not appear that Plaintiffs drafted their Petition with Section 711 immunity in mind, and it is therefore possible that Plaintiffs, given the opportunity to amend their Petition, could state a claim for relief. Accordingly, the Court finds it is appropriate in this case to afford Plaintiffs the opportunity to file an amended complaint should they wish to do so within twenty-one days from the date of this Order and Reasons.

## CONCLUSION

For the foregoing reasons, Defendants' motions (R. Docs. 32 and 34) are **GRANTED IN PART** and **DENIED IN PART**. To the extent Defendants seek summary judgment based on Plaintiffs' failure to produce expert witness evidence or evidence of willful misconduct or gross negligence, Defendants' motions are **DENIED**. To the extent Defendants' motions seek dismissal of Plaintiffs' claims for failure to plead a claim for gross negligence or willful misconduct, Defendants' motions are **GRANTED**.

**IT IS FURTHER ORDERED** that, should Plaintiffs wish to file an amended complaint, they must do so within **twenty-one days** from the date of this Order and Reasons. If Plaintiffs fail

to file an amended complaint, the Court will dismiss Plaintiffs claims with prejudice.

New Orleans, Louisiana, this 24th day of June 2024.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**